And good morning again. May it please the court, Thomas Sotakia on behalf of Ernesto Hernandez. This does involve one of the same issues as the last case, but for the record obviously we need to argue this separately. It involves the issue again of Officer Thayne Costa. The misconduct at issue is the same in the sense that there was an instance of untruthfulness on the part of Officer Costa from 1996, a while ago, that we believed should have been admitted under Federal Rule of Evidence 608B. The government filed a motion in limine and the judge granted it and excluded it. What I want to point out and really emphasize is because 608B doesn't have that 10-year limit as does Rule 609, the district court really needs to look at the conduct at issue and determine whether or not it's probative of truthfulness or untruthfulness. The conduct at issue in this case by Officer Costa was, I would say, quite egregious and severe, I would submit. In an official investigation into the conduct of a law enforcement partner of his, he was found to be untruthful. His partner discharged his firearm 15 times. He shot 15 shots and it was found that Officer Costa was right there nearby and Officer Costa wrote in a report about the instance that he didn't see his partner discharge his firearm, which in turn affairs found to be untrue. This instance was for a 403 ruling? Yes. The court, again, relied heavily on its age and found that because it was so old it didn't carry probative value. He then also, though, went through a 403 analysis and said that the risk of prejudice by the jurors hearing about this prior instance of untruthfulness was great and outweighed the probative value. Our position is that it should have gone to weight rather than admissibility. The government clearly could have argued, well, it was old and people can change and that doesn't mean he's always a liar. They could have argued whatever they wanted. But we should have been able to argue, when you're talking about this severe of a misconduct, I mean, to lie about the use of deadly force by your partner in your capacity as a law enforcement officer, we should have been allowed to argue, you know, listen, that speaks highly to the character. I mean, that speaks, says a lot about the character of Officer Costa. As to, and we were not allowed to argue that. In this case, Officer Costa's credibility, again, was very much so a big part of the government's case and prosecution. Officer Costa, again, was involved in a control delivery. Again, was one of the first officers on the scene. He made many observations leading up to the delivery. But what really hurt, what was really harmful, was his testimony about what happened after. And what he said about after is, in addition to some of his interactions with the people present at the house, when he was leaving the residence with Defendant Appellant Hernandez, he searched a vehicle that the government believed belonged to Mr. Hernandez, and Mr. Hernandez admitted it belonged to him. And he talked about these money order receipts that he says were found in the center council, not in plain view. And then the government tied those receipts to, there was other evidence that made those receipts damaging to the defense. Well, Defendant Hernandez, Appellant Hernandez, testified that there was no center council that could conceal anything, and that the money order receipts were not concealed in his car that he knew of. Now the reason that was important is because another person there, Mr. Robocheski, I believe is how you say his last name, Officer Costa said he saw Mr. Robocheski being the last one to operate the vehicle. And so if the receipts were in plain view on the center council, that would support an argument that the receipts came from Mr. Robocheski, not the owner of the car, as he was the last one in there. But if the receipts were hidden in a center council, then it would be more likely that it was that of the owner's. And so that was very damaging, we would submit. It seems relatively far-fetched anyway. I mean, the owner could have left them in the center council, the other guy could have put them in the center, the owner could have left them out, the other guy could have put them in the center council, which wasn't, it was just a regular thing that you lift up and put it in. So it just seems meaningless. Well, I would agree with you, except for the fact that Defendant Appellant Hernandez testified, and he testified that there was no center council and there were no money order receipts in the center council. And so what happened is it became a matter of if you believe Officer Costa, then therefore you would think that the defendant was lying. And so even more so, Officer Costa's credibility was at issue in this case. And so there was prejudice. I mean, again, Officer Costa was a critical witness for the government, we would submit. And again, I mean, our position is it should have gone to weight, not admissibility. I mean, this was a pretty serious act of untruthfulness on the part of a law enforcement officer. The thing I was wondering about, though, I mean, okay, so Officer Costa, he appears to be an investigator with the airports? What he is is he's actually a Honolulu Police Department officer, but he's cross-deputized as part of a task force, so at the time he's operating as a deputized federal agent. But he's part of a task force that operates out of the airport. And as far as I can tell, so this is his job, is to kind of do controlled delivery? While he was with the task force, that's a large portion of their activities, is when they intercepted parcels coming into the airport through the mail or otherwise, they would then go through this process of doing these controlled deliveries. And then later, if it turns out it's drugs or something in the prosecution, he's the case agent for the prosecutors. Right. Now, he's had this one internal investigation report of a grievous misconduct, which I would agree with that. But it was, I don't know, more than 10 years? 16 years. 16 years ago now. And there's no evidence of any similar misconduct in those intervening 16 years, right? Correct. That I'm aware of. Pardon me? That I'm aware of or that's in the record. And I'm sure now that every time Officer Costa is the case officer who's going to play a role as a witness in one of these trials, you're getting these motions in limine to exclude this one report, right? That's probably what's going to happen, except he's no longer on this federal task force. Okay. So it shouldn't be a problem anymore. But I was just, I mean, it seems to me that as it got in his career, remoter and remoter, that it would even begin to lose its primitive value, given that there's no evidence of repeat misconduct that was so egregious. I mean, I don't see anything in this record or the other records. And that's something that the government could have argued to the jury, and that should have gone to weight rather than admissibility. And then we could have made a counterargument that that type of egregious behavior goes to the heart of someone's character and that's not something that changes over time. We could have made that argument and they could have said, hey, it was a long time ago, and then the jury could have decided what weight to give it. But to not let the jury hear that, we believe was error, and we believe it resulted in prejudice to Mr. Hernandez. Thank you so much. Thank you. Good morning again, Your Honors. Mark Nsiang for the United States. In this case, as in the Drumondo case, the district court made a well-reasoned finding, well within its discretion, finding that the incident regarding Mr. Costa was too old, 1996. He cited in his opinion or in his ruling, United States v. Jackson, 882 F. 2nd, 1444, which says that remoteness remains a relevant factor for the trial court to consider in assessing the probative value of the evidence. Then he went on to make a 403 balancing test, and that's at pages 20 to 31 of the ER. So there's nothing that was outside the court's discretion or without any well-reasoned finding in making that conclusion. Even if it was, the harmless error standard applies. And again, in this case, you have overwhelming evidence of Mr. Hernandez's guilt that he cannot show prejudice. Remember, Mr. Hernandez in this case was the one person of the four in the house who had the fluorescent powder on his hands from the processing of the controlled delivery. No one else. Overwhelming evidence. Mr. Hernandez then took the stand, and as the district court said at sentencing, I have to say I've seldom heard a defendant lie as often and as much about such critical core parts of the case than this defendant did. Statement after statement after statement out of Mr. Hernandez's mouth was a lie, and I have to say he wasn't a very good liar. It was pretty obvious when he was doing it to me based on the manner of testifying, and the jury apparently didn't have any difficulty concluding that he was lying as he was convicted and found guilty beyond a reasonable doubt. If the jury believed what he said, that conviction obviously would not have followed. That's at SCR 157. So forget about Officer Costa's role in the conviction. It was Mr. Hernandez with the fluorescent powder on his hands and his own lie after lie after lie on cross-examination. It wasn't Costa who testified about the powder on his hands, or it wasn't only Costa. No. In fact, Agent Jones was the one who actually was the main witness who testified about that, and he's the one who did a demonstration for the jury about how the search powder, the fluorescent powder worked, and he was the one who checked each of the individual's hands after they entered, pursuant to the search warrant, and found that Mr. Hernandez was the only one with the searchie powder on his hands. If I can ask you just real quick about Agent Costa, or Officer Costa. I understand, at least based on representation of your opposing counsel, that he's no longer on the task force. Correct. I was surprised to see that he was a deputized federal officer in light of that conduct in 1996. I'm hoping that we're not going to have more cases involving Officer Costa in these types of cases. Is that the plan in the U.S. Attorney's Office, not to have him testify anymore? Well, Your Honor, I don't believe that his not being on the task force had anything to do with it. I think it was a rotational basis based on HPD. I'm not personally involved in the vetting process of this. There is one that I know of. What the specifics are, I don't know, but certainly it is our goal not to have any sort of past incidents such as this one. Because I know the U.S. Attorney's Office does have a say on what cases they take, and I remember when I was in the U.S.A., we had a list of the no-agent cases. And it would seem to me that to have a guy who lied like he did, and that was 1996, I appreciate that, but lied like he did about a very serious incident is not the kind of witness that the government would want to portray to a jury. I appreciate the motion that you filed. If I was in the U.S.A., I probably would have done the same thing. But we're probably not here if you had some other officer than Mr. Costa. So I'm assuming going forward you'll get the memo back to the folks in your office that this is not the kind of witness you want to be calling in these cases. Yes, Your Honor, I agree completely. The only other thing that I want to add is in regard to the money orders that were discovered in Mr. Hernandez's car. I don't believe that the defense has the point of those here. It doesn't matter where those were found. That wasn't the evidentiary value of those wire transfers. The evidentiary value was that they were then connected to Dena Marie Alibang, who testified that the defendant gave her $5,000 to purchase five separate $1,000 money orders. She told us what post office she had done it, and then through U.S. Postal Service records, they found the corresponding records and matched those. So where they were found really was immaterial. The fact was we tied a civilian witness to the defendant directly who had said she... It doesn't really matter who put them there. Correct, correct. So unless the court has other questions, I will submit on my briefs in regard to this matter. All right, thank you, counsel. You had a minute and something left. Just very briefly. You know, in cases where you have cooperating defendants testify or other people who are under investigation testify, especially when you're dealing with cooperating defendants, the jury is instructed that they are to view that testimony with greater skepticism or with more caution than others because of the risks involved in that type of testimony. And so when you have testimony from co-defendants who are to be viewed that way, and then you have a law enforcement officer... What do you do with the powder on the hand? Which was not as if there was testimony separate from officers. I would say it makes the credibility issue even more important because the defendant in this case testified about the powder on his hand and how it got there. And it was cross-examined to demonstrate that this story couldn't be true. Well, he testified, he had an explanation for that. An explanation which was then totally debunked and he retracted it pretty much. He didn't retract it. He first said that the box was on fire and then he said, no, the box wasn't on fire. That's my understanding. I would respectfully disagree. He talked about the box being on fire. There was pictures of the plastic, I guess, thing on the box that holds the bill on it had been melted. So he never retracted his statement. I thought they showed him the box and said, where are the burn marks in the box? And he said, oh, there weren't any. It was a paper that was attached to it that was burning. Right. And then he says that his hands got a little burned and then they had looked at his hands. Jones said he looked at his hands and there was no injury. Well, that was, again, Jones's testimony. All right, but it wasn't Costa's testimony is the point. Right.  There was some corroboration that there was a fire related to some part of the box as the plastic was burnt. And so the defendant's credibility was obviously at issue because he testified. And then you had Officer Costa who testified to something different related to the money orders. And the argument is if you believe Officer Costa, then you thought the defendant was lying. And that didn't help probably with his credibility overall. What difference does it make where the money orders were? Because the defendant said. As your colleague said, the important thing is that there were money orders that corresponded to the testimony, that there were money orders that this woman was told to get by him. Because the money orders, Joseph Robucheski was the last one seen in the car. When they tracked the money orders, Robucheski was the one on the video getting the money orders, not Mr. Hernandez. But she said that she was told to buy them. That is what she testified to, yes. And that's something that, again, Mr. Hernandez disputed and denied. So the bottom line is our position is Mr. Hernandez's credibility was clearly at issue because he testified. Officer Costa testified to something different than what Mr. Hernandez said. And so the jury was left to believe one or the other. And this prior act of untruthfulness, we believe, would have been probative and helpful to the jury in weighing who was more credible. Thank you. Thank you, counsel. U.S. v. Hernandez will be submitted.
judges: Wardlaw, Berzon, Owens